Pg 1

# United States District Court

### District of Massachussettes

Jerry Coviello
Plaintiff

v.                    CA # 04-11901-MLW

Town of Chelmsford
et al
Defendant

### Plaintiff Jerry Coviello's disclosure in accordance with Fed. R. Civ. P. 26

---

The Plaintiff Jerry Coviello provides the following information pursuant to the initial disclosure provisions of local rule 26.2 (A), 35.1, and 26.1 (B) (1) and (2).

26.2 (A) (i.e. 26 (a)(1) = (A)(B)(c) (D) ).

26 (a) (1) (A)  Individuals likely to have discoverable information relevant to disputed facts.

Pg2

1. Jerry Coviello, Plaintiff, 71 North Rd. Chelmsford, MA. 01824  978-256-1986  978-884-8513

2. Richard Fries, witness, 15 Hull Rd. Chelmsford, MA.  978-256-5344.

3. Mr. Moi, Mgr Hong & Kong restaurant (since retired) address & phone unknown.

4. James Spinney, defendant, Chelmsford P.D., 1 olde north Rd, Chelmsford, MA 01824

5. Jennifer Fay, defendant, Chelmsford P.D.

6. Gary Hannagan, defendant, Chelmsford P.D.

7. Chief Raymond McCusker, defendant, Chelmsford P.D.

8. Lt. Scott Ubley, Chelmsford P.D.

Pg 3

9. Michael Horan, defendant, (was police officer at the time, since terminated), 65 Davis Rd, Chelmsford, MA.

10. Detective Billy Winn, 7 Lois St. Methuen, Ma. 978-689-0375, 978-804-7148

11. Lilian Clark, witness, 124 West main St #33, merrimac, Ma. 01860, 978-346-9901    pgr 978-316-3868.

The Plaintiff reserves the right to supplement this list as more information becomes available.

P.4

26 (a) (1) (B)   Description by Category and location of all documents that are relevant to disputed facts alleged with particularity in the pleadings.

---

1. Police report, officer FAY, see attached no. 1

2. Investigative report of Detective Billy Winn see attached no. 2

3. Grand Jury testimony of Michael Horan, see attached no. 3

4. Grand Jury testimony of Gary Hannagan, see attached no. 4

5. Written statement of witness Lilian Clark, see attached no. 5

6. A Judgement for assault and Battery against michael Horan See attached no. 6

Pg 5

7. Interim report of Zed McLarnon Senior Audio/Visual & Computer Engineer for F.E.T.   See attached no. 7

The plaintiff reserves the right to supplement this list as more information becomes available.

26 (a)(1)(c),   A computation of any category of damages claimed

1. Compensatory damages for 5 months of Wrongfull Imprisonment = $ 500,000.00

(a) Compensatory damages/Expenses incurred while waging defense against Wrongfull arrest, illegal search and Seizure

Pg 6

and wrongful imprisonment:

attorney Fees = $20,500.00

Private Detective Fees = $2,200.00

2 years lost wages = $90,000.00

Paralegal Fees = $500.00

Expert Witness Fees = $3,000.00

Damage totals =

  Compensatory = $500,000.00

  Costs   =   116,200.00

  total  =  $616,200.00

The Plaintiff would like the right to add to this list as/if Fees or Expenditures increase.

Pg 7

26(a)(1)(D) <u>Insurance</u>  N/A (not applicable)

35.1  Disclosure of medical information in personal injury cases

not applicable

26.1 (B)  Disclosure Orders

1.  A sworn statement that;

(a) itemizes all economic loss and provides a computation of damages.

See attached no. 8

(b) Identifies all persons then known to the claimant who witnessed or participated in the transaction or otherwise known or believed to have discoverable information

Pg 8

1) Jerry Coviello, Plaintiff
2) Richard Frois, witness
3) Mr. Moj, witness
4) James Spinney, defendant
5) Jennifer Fay, defendant
6) Gary Hanagan, defendant
7) Raymond McCuster, defendant
8) Scott Ubley, defendant
9) Michael Horan, defendant
10) Billy Winn, witness
11) Lilian Clark, witness

The Plaintiff reserves the right to supplement this list as more Inf becomes available.

Pg 9

(c) Identifies all opposing parties and all officers from whom statements have been obtained regarding subject matter.

---

1. Michael Horan, ex-police officer, police report and Grand Jury testimony

2. James Spinney, police officer, Police report & Grand Jury testimony

3. Gary Hannagan, police officer, police report & Grand Jury testimony

4. Jennifer Fay, police officer, Police report

5. Raymond McCusker, police chief, written letter answering my request for an internal affairs investigation See attached no. 9

Pg 10

(d) Identifies all governmental agencies known to the claimant to have investigated the transaction or occurance

---

1. The Chelmsford Police Dept.

See attached no. 9

Respectfully Submitted: 7-06-05

Jerry Coviello

Jerry Coviello  Pro Se
71 North Rd.
Chelmsford, MA. 01824

978-256-1986
cell 978-884-8513

I. Jerry Coviello, attorney pro se, do hereby confirm that I filed a complete copy of this Acceptance of the Joint Statement and attached Settlement Proposal with the Court today, April 21, 2005.

I, Jerry Coviello, attorney pro se, do hereby confirm that I mailed via certified mail, a complete copy of this Acceptance of the Joint Statement and attached Settlement Proposal today, April 20, 2005 to:

Attorney Georgia K. Critsley
Brody, Hardoon, Perkins & Kesten, LLP
One Exeter Place
Boston, Massachusetts  02116


Signed under pains of perjury, _____
                        Jerry Coviello, pro se
                        71 North Road
                        Chelmsford, MA 01824
                        (978) 256- 1986
                        (978) 884-8513

*Attached no. 9*





# Town of Chelmsford
## Police Department

Raymond G. McCusker
Chief of Police

October 30, 2002

Mr. Gerald A. Coviello
52 Stedman Street
Chelmsford, MA 01824

Dear Mr. Coviello:

I am writing to inform you that Lt. James Murphy has reviewed your civilian complaint and has determined that it is unjustified.

A review of police officer reports surrounding your arrest give no credence to your allegations. Furthermore, I find it highly unusual that the complaint comes more than one year after the incident.

Yours truly,

Raymond G. McCusker
Chief of Police

230 North Road, Chelmsford, MA 01824
Telephone: 978 250-5255, FAX: 978 256-7094

P-28-01 10:04A                                                              P.04

03/17/2001  10:02      9702566872           CHELMSFORD              PAGE  04

*Attached no. 1*

POLICE OFFICER'S FORMAL REPORT            09/17/01 09:57
CHELMSFORD POLICE DEPT                          PAGE:   1

Case#:   178725
rpt date: 09/14/01 08:15          reported: FRIDAY      09/14/01 08:14
     ver: #30  POLICE INFORMATION

location: 230 NORTH RD
    follow up by: None needed              case status:  CLEARED NORMAL
        officer:                           rpt status: Complete
                                           review officer:  21 SGT ROONEY
comp/vict notify: No          sup review officer:
cir/involve type:
-----------------------------------------------------------------------

complaint: CAR-3  POLICE GENERAL
-----------------------------------------------------------------------
reporting officer:  68 PTL FAY              assignment: B       car: 3
second officer:                            sup/back-up:
-----------------------------------------------------------------------

                    *** NAMES ***
  type    mast#   name/add                    phone        dob       ss#
  ======  ======  =====================  ================  ========  =========
  INVOLVED 008865 FRIES,RICHARD A           (978) 256-5344 11/06/61 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
                  15 HALL RD  CHELMSFORD MA 01824

  INVOLVED 020463 COVIELLO,GERALD A         (978) 256-9192 06/06/59 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
                  52 STEDMAN ST  CHELMSFORD MA 01824

-----------------------------------------------------------------------

                    *** NARRATIVE ***
      ON AUGUST 31, 2001 AT 2000 HRS I BEGAN MY DETAIL AT THE HONG
KONG RESTAURANT IN CHELMSFORD.  THE BAR WAS RELATIVELY QUIET AND
THERE WERE NO PROBLEMS WITH ANY OF THE PATRONS.  AROUND 0030 HRS
I OBSERVED A MAN, LATER IDENTIFIED AS GERALD COVIELLO, LEAVE THE
RESTAURANT.  ALTHOUGH I AM UNAWARE OF WHEN GERALD ARRIVED AT THE
RESTAURANT AND HOW MUCH ALCOHOL HE WAS SERVED, GERALD APPEARED
FINE AS HE WAS LEAVING.  APPROXIMATELY 25 SECONDS AFTER GERALD
LEFT THE BUILDING, RICHARD FRIES EXITTED THE BAR AREA.  I WAS
STANDING IN THE FOYER OF THE RESTAURANT WITH THE MANAGER, MR
MOI.  RICHARD APPROACHED ME AND STATED, "I REALLY LOVE YOU AND I
WANT TO HAVE MY WAY WITH YOU."  RICHARD WAS ABOUT 8 FEET AWAY
FROM MY PERSON AND I DID NOT FEEL THREATENED AT ALL.  RICHARD
THEN LEFT THE RESTAURANT.
      DUE TO THE TIME IN BETWEEN DEPARTURES, I WAS UNAWARE OF THE
FACT THAT THE GERALD COVIELLO AND RICHARD FRIES WERE TOGETHER.
AT NO TIME DID I RADIO TO ANY PATROL UNITS ON THE ROAD ABOUT WHO
WAS LEAVING THE RESTAURANT OR ABOUT ANY PROBLEMS I HAD
ENCOUNTERED INSIDE THE RESTAURANT.

*Attached No. 2*

# Winn Detective Agency
## P.O. Box 1872 Lowell, MA 01853-1872
## Phone 978-689-0375 Fax 978-989-9985

## FAX COVER SHEET

TO: *Att. J Thomas Kerner*

FROM: *Bill Winn*

NUMBER OF PAGES INCLUDING COVER SHEET: *3*

NOTES: *Any questions or any Changes needed please feel free to Call*

NOTE:     If you have received this document in error or not in its entirety please notify us at the above listed telephone number.

Thank you.

*WJWinn*

# Investigation
# Of
# Gerald Coviello

For:   Attorney J. Thomas Kerner
From:  William J. Winn
       Private Investigator MA Lic> P903
Date:  May 13, 2004

I have been conducting a criminal investigation for several attorneys regarding Mr. Gerald Coviello since May of 2002. Attorney J. Thomas Kerner recently requested a written report on two matters. One was to conduct an interview with Mr. Moi, a manager at the Hong Kong Restaurant located in Chelmsford, MA and secondly Attorney Kerner wanted to know any information I had pertaining to Gendron's Auto Body Shop, specifically any work records Mr. Al Gendron might have on Cruiser #7 belonging to the Chelmsford Police Department.

I conducted an interview with Mr. Moi in August of 2002 as to anything he might remember as to events that occurred on the evening of August 31, 2001 at the Hong Kong Restaurant between Richard Fries and Gerald Coviello with Officer Fay of the Chelmsford Police Department. Officer Fay was working a detail at the restaurant that evening and wrote a report concerning remarks made to her by Mr. Fries. Mr. Moi advised me that he remembered the incident and he also remembered Officer Fay walking towards the door when Mr. Fries left. Mr. Moi also stated that he saw Officer Fay use her radio.

This investigator wanted to make sure Mr. Moi fully understood what he was saying and so on September 3, 2002 I went back to the Hong Kong Restaurant with Mr. Leon Leung. Mr. Leung is a schoolteacher and speaks the same dialect of Chinese Cantonese as Mr. Moi speaks. Mr. Moi once again advised me that he knew I was a private investigator. He also said he understood that speaking to me was voluntary. Mr. Moi told Mr. Leung the same thing he had told me on my previous visit as to what he remembered about the incident as well as Officer Fay using her radio.

*irrelavent* I went to the Chelmsford Police Department on June 13, 2002 and requested to take a picture of Cruiser #7. I was advised that no one was available at the time and I should have the district attorneys Office contact the Chelmsford Police Department to advise them that it was ok for me to view Cruiser #7 and take pictures. I then contacted ADA Barton and was told he would call the Chelmsford Police and advise them that he had no objections to me viewing Cruiser #7. On 6/18/02 I went back to the Chelmsford Police and was advised by Lt. Scott Ubele that the cruiser was at Al Gendron's Body Shop being repaired. I then went to Gendron's and was advised that Cruiser #7 was repaired for rear end damage several weeks earlier. I went back to the Chelmsford Police and Lt. Ubele radioed Cruiser #7 to report to the station.

I observed Cruiser #7 and it was recently painted and did not have any marks on it. I later went back to Al Gendron's Body Shop and was advised by Mr. Gendron that when he repaired the cruiser he observed a mark the length of the driver's side of Cruiser #7. Mr. Gendron further stated that he just buffed out the mark and did not charge the Chelmsford Police Department for the work because he felt he does all the bodywork for the Chelmsford Police Department and that the mark was not significant enough to charge. It was not a big job an and Mr. Gendron also stated he could not find any work order in his files on work he did on Cruier#7 which is why he could not produce any paperwork.

Grand Jury testimony

Attached no. 3

7

MICHAEL HORAN, Sworn.

Q    (Mr. Barton.)  Reminding you to keep your voice up,
     introduce yourself to the grand jurors and tell them
     what you do for a living.

A      My name is Officer Michael Horan.  I'm a
     police officer with the Chelmsford Police
     Department.

Q    How long have you been an officer with the
     Chelmsford Police Department?

A    Two years.

Q    What is your current rank?

A      Patrolman.

Q    Sir, I'd like to direct your attention now to the
     early morning of September 1, 2001.  Were you
     working?

A      Yes.

Q    In what capacity, what was your assignment that
     early morning?

A      We had received a federal grant to put five
     officers on the road for selective enforcement for
     doing traffic stops, and I was parked on Chelmsford
     Street.

Q    At approximately 12:30 or so on the 1st, did a
     particular vehicle attract your attention?

(* See Pg 12 )  (see pg 8 line 13 )

8

A     Yes.  I was finishing up a report from

earlier, and I could hear the sounds of a defective

muffler coming from the left, and that's when I

looked up and saw a vehicle heading down Chelmsford

Street in front of my location.

Q     What type of vehicle was it?

A     It was a blue Mustang, Ford Mustang.

Q     Late model or—

A     It was a late model.  I believe it was a '67.

Q     Did anything else about the vehicle attract your

attention?

A     The driver's side rear taillight was out.

Q     As a result of these observations, what did you do?

A     I pulled behind the vehicle and turned on the

safety equipment on the vehicle when it was safe to

do so, which means the lights.

Q     Were there any vehicles between you and this

particular vehicle?

A     No.

Q     How fast was the vehicle traveling?

A     At that point it was probably about 25 miles

an hour.

Q     What did you initiate first; did you initiate your

overhead lights or your siren?

*Note descrepency between this and "attached no. 5"*

Horan

12

1

2  Q    What was his response to that request?

3         A    His response to shutting off the vehicle was

4  no.  He was very angry the way he said it, meaning

5  an aggressive no, and then when we asked him to step

6  out of the vehicle, there was also an aggressive no.

7  Then Sergeant Spinney asked him, and he also replied

8  no.

9  Q    Was his vehicle door locked?

10        A    The door was locked and the window was about

11  six inches from being rolled all the way down, and

12  at that point we tried to open the door and the door

13  was locked, and that's when he did a U-turn on

14  Chelmsford Street from the scene.

15  Q    Describe how he left the area.

16        A    He put it in drive and just turned right

17  there, backed up right in front of Papa Gino's and

18  went down, just missing Officer Hannagan, who was

19  standing on the other side of the vehicle and then

20  he scraped down the side of Car 7, and we had a

21  motor vehicle pursuit going down Chelmsford Street

22  towards Lowell.

23  Q    Describe the motor vehicle pursuit; how many

24  cruisers were involved?

25

*(handwritten left margin, rotated:)* Note descrepencies between this description and Officer Hannagan's — (pg 20 lines 17-25) (pg 21 lines 1 → 5)

*(handwritten annotation near line 12:)* a car they barely care.

*Grand Jury testimony*

*Attached no. 4*

19

GARY HANNAGAN, Sworn.

Q   (Mr. Barton.)  Introduce yourself to the grand

jurors and tell them what you do for a living.

A   I'm Officer Gary Hannagan, Chelmsford Police

Department.  I'm a patrolman.

Q   How long have you been a patrolman with Chelmsford?

A   Just about two and a half years.

Q   Directing your attention to the early morning of

September 1, 2001, were you working?

A   Yes.

Q   In what capacity or what was your assignment?

A   We were on a selective enforcement for drunk

drivers.  It's something that the state gives us

grants for, working from 10:00 p.m. to 2:00 a.m.

Q   Did you have occasion to be present at or near the

scene of a stop that was effected by Officer Horan

on Chelmsford Street?

A   Yes, I was.

Q   Describe what, if anything, you did during the

course of that stop.

A   Officer Horan initially stopped the car on

Chelmsford Street.  It's common for us when we're

doing these type of enforcements to back each other

up.  I was the second car on the scene.  I pulled up

# LILLIAN M. CLARK

124 W. Main Street, #33
Merrimac, MA 01860-2250
(978) 346-9901

*Attached no. 5*

September 9, 2001

Attorney Scott Bratton
Lowell, MA

Dear Mr. Bratton

I am writing in regards to Gerald Coviello and statements that have been made in regards to the charges against him. This incident involving Gerry has taken us by surprise, having known him as a quiet and private individual.

Although, my acquaintance with Gerry is only through being a friend to his mother, I know that this is completely out of character with his personality. Due to the ill health of his mother, my husband and myself were quite concerned about the stress to Penny and stopped in the next evening to speak with her. After learning of what took place and statements made by the Chelmsford Police to Penny, my husband and I went out purposely to check Gerry's automobile for Penny. We discovered that all lights; headlights, taillights, stop lights, etc., were in fine condition. We also noted that the car being an older model Mustang, that there was no damage done to the vehicle. Therefore, we were quite taken back when we read the reports of him hitting a police vehicle and more so confused when it was stated that he was stopped due to a taillight being out. None of these statements made sense to us, having checked out the automobile ourselves.

If we can be of any assistance in this matter, please contact us. Thank you for your time.

Sincerely,

Lillian M. Clark

*Stamped Seal not visible in copy*

*The above named Lillian M. Clark appeared before me this 9th day of September 2001*

*Attached no 6*

6/9/05

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.                                    LOWELL DIST. COURT

GERALD COVIELLO,                      )
                                      )
        Plaintiff,                    )
                                      )        *Acts Andre*        CIVIL DOCKET NO.
V.                                    )        04/11/CV/1151
                                      )
MICHAEL HORAN                         )    *No cppo on Andres /sim*
                                      )
        Defendant.                    )                        *Liason X pw*

### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Now comes the plaintiff and, pursuant to M.R.Civ.P. 56,

moves this Honorable Court to enter judgment in favor of the

plaintiff.

On count 1 the Court should rule that the defendant

assaulted and battered the plaintiff and should order the

defendant to pay the plaintiff $100.00 to compensate him for

the pain he experienced when he was assaulted and battered

by the defendant.

In Support of this motion the plaintiff files a

memorandum of law and his affidavit.

                            Respectfully Submitted,

                            GERALD COVIELLO
                            By his attorney:

MOTION ALLOWED
                            *Thomas Kerner*
DATE ___6c05___             J. Thomas Kerner
                            BBO# 552373
JUSTICE _____         Attorney at Law
                            230 Commercial Street, 1st Fl.
                            Boston, MA  02109
                            (617) 720-5509

*Attached no. 7*

**F·E·T·**

**FORENSIC ENGINEERS & TECHNOLOGISTS**

John M. Orlowski, P.E., CSP, BCFE, Director
11 Vanderbilt Avenue, Suite 120
Norwood, Massachusetts 02062-5056

PHONE: (781) 762-8377
FAX: (781) 762-1862
fet-forensics@nvcc.com
www.nvcc.com/fet-forensics

March 15, 2005

## INTERIM REPORT

### BACKGROUND

I was given an audiocassette tape copy of the Chelmsford Police dispatch tape dated August 31/September 1, 2001 by attorney Thomas J. Kerner. Attorney Kerner represents Mr. Gerald Coviello in the matter of "Commonwealth of Massachusetts vs. Coviello" docket # MICR2001-01129.

### TAPE INSPECTION

I transferred the dispatch cassette into my Digital Audio Workstation. I, then, analyzed the audio signal in detail.

My analysis disclosed that at least one section of the dispatch tape clearly indicated the cassette copy was not a real-time copy of the original dispatch tape.

On that section of the tape, the audio signal "came up to speed." This means that when the original tape was being transferred to the copy, the tape machines were stopped and then restarted. When the copying process was restarted, a signal that was on the playback machine was recorded onto the record deck as it was coming up to speed.

This anomaly in the copying process cannot occur in a real-time copy where the playback machine and the record machine were started and did not stop during the entire copying process.

I informed Mr. Coviello of my finding. Mr. Coviello and attorney Kerner sought and obtained a court order for the Chelmsford Police to provide a CD and another cassette of the original dispatch tape.

## COURT ORDER FOR CD COPY OF DISPATCH TAPE

Attorney Kerner and I visited the Chelmsford Police Department on January 13, 2005. We were introduced to Lt. Scott R. Ubele as the officer in charge of the dispatch recordings. Lt. Ubele allowed me to inspect the equipment upon which the dispatch tapes were recorded. We, then, were allowed to listen to the original dispatch tape.

Attorney Kerner and I were assured by Lt. Ubele that we would receive a CD and a cassette copy of the dispatch tape. Attorney Kerner and I requested that the new copy of the dispatch tape be started twenty minutes earlier than the copy we previously received. Lt. Ubele assured us he would provide such copies within a couple of weeks.

When we left the Police station, I explained to attorney Kerner how the police dispatch tape had been edited.

## BREAKDOWN OF PROCESS

Several days later, attorney Kerner terminated his representation of Mr. Coviello, without providing him with a suitable replacement.

Secondly, Lt. Ubele has not provided us with a CD or cassette copy of the dispatch tape as he assured us he would and as mandated by a court order.

These acts deny the defendant, Mr. Coviello, legal representation and me, his expert witness, the exculpatory evidence that I witnessed the Chelmsford Police have in their possession to prove Mr. Coviello's innocence.

To proceed with hearings and a trial without a defendant receiving any and all evidence to prove his innocence would truly be a travesty of justice.

Submitted by

*Zed McLarnon*

Zed McLarnon
Senior Audio/Visual & Computer Engineer



## FORENSIC ENGINEERS & TECHNOLOGISTS

John M. Orlowski, P.E., CSP, BCFE, Director
11 Vanderbilt Avenue, Suite 120
Norwood, Massachusetts 02062-5056

PHONE: (781) 762-8377
FAX: (781) 762-1862
fet-forensics@nvcc.com
www.nvcc.com/fet-forensics

**ZED McLARNON** - *Senior Staff Consultant, Audio/Visual & Computer Engineering*

**EDUCATION:**

    1968: Wentworth Institute - Electeronics

    Graduate - NASA Soldering School

**EXPERIENCE:**

**1982 to Present:**    Freelance Audio Engineer/Producer.
Audio/Video Design Consultant.
Technical Director of Zedz Music Digital Sound Studios.

**1993 – 1994**    **Northeast Broadcasting School, Boston, MA**
Nationally certified two-year technical school teacher
Tought Physics of Audio, Recording Techniques and associated disciplines.

**1976 - 1982:**    **University of Mass. Media Center, Boston, MA**
Position: Audio Consultant (during installation of 16 Track Studio).
Chief Engineer/Studio Manager of Audio Studio.
Duties: Design and install all electronics in 16 Track Audio Facility.
Engineer audio recording sessions.
Manage the booking, billing and marketing of studio.
Supervise technical staff.

**1973 - 1976:**    **Paul Winter Consort, Litchfield, Connecticut**
Position: Audio Engineer
Duties: Design and maintain touring Public Address Systems.
Travel with and operate sound system.
Recorded two albums with the Consort and all conserts.
Conduct electronic workshops at colleges visited.

**1971 - 1973:**    **Intermedia Sound Studios, Boston (First 16 track facility in world).**
Position: Technical Director/Recording Engineer

Duties:  Designed, installed and maintained all electronics (16 Track system).

Record albums, sound tracks, commercials and jingles.

**1972 - 1973:**    **M.I.T., Cambridge Massachusetts**

Off-campus advisor for M.I.T.'s Undergraduate Research Opportunity Program (UROP)

Duties:  Instruct students in the tuning of a professional audio studio control room.  Design and Built a stereo 1/3 Octave Equalizor.  Built it into studio and use with audio spectrum analyzer to electronically tune the studio's (Intermedia Sound) control room.

**1970:**    **Fleetwood Recording Studios - Recording Engineer**

**1969:**    **Natural Sound Studios, Maynard, Massachusetts - Recording**
**Engineer**

– Intern

**1968 – 1969**    **Analog Devices, Cambridge Massachusetts**
Design Technician/Quality Control Dept.


**STUDIO INSTALLATIONS:**
- Intermedia Sound Studios, Boston, MA -  16 Track Audio Studio.
- University of Massachusetts, Boston, MA - 16 Track Audio Studio/Television Studio intallation.
- New England Life Television Studio, Boston, MA -  Audio studio installation.
- Beth Israel Hospital Television Studios, Boston, MA - Monitor & headphones system installation.
- New England Deaconess Hospital Television Studio, Brookline, MA – Audio Studio Installation.
- Selcer Sound Studios, Boston, MA – 8 Track Audio Studio.
- Zedz Music Recording Studios, Malden, MA – 16 Track analog & digital Audio Studio.

*Attached no. 8*

Jerry Coviello v Town of Chelmsford, et al    CA # 0411901  MLW

## PLAINTIFF'S SETTLEMENT PROPOSAL

Plaintiff Jerry Coviello  proposes:

1) Compensatory Damages for five (5) months of Wrongful
   Imprisonment  =  $500,000.00

   a. Compensatory Damages/Expenses incurred while
      waging defense against Wrongful Arrest, Illegal
      Search and Seizure and Wrongful Imprisonment:

      Attorney Fees= $20,500.00
      Private Detective Fees= $2,200.00
      2 years Lost Wages= $90,000.00
      Paralegal Fees= $500.00
      Expert Witness=$3,000.00

   Damage Totals=

      1) $500,000.00 Compensatory Damages for
      Wrongful Imprisonment/ Violation of Civil Rights
      and
      2) $116,200.00  Costs incurred as a direct
      result of Defendants' wrongdoing against
      Plaintiff Coviello

Total  Damages sought by Plaintiff = **$616, 200.00**

I. Jerry Coviello, attorney pro se, do hereby confirm that I filed a complete copy of this Acceptance of the Joint Statement and attached Settlement Proposal with the Court today, April 21, 2005.

I, Jerry Coviello, attorney pro se, do hereby confirm that I mailed via certified mail, a complete copy of this Acceptance of the Joint Statement and attached Settlement Proposal today, April 20, 2005 to:

Attorney Georgia K. Critsley
Brody, Hardoon, Perkins & Kesten, LLP
One Exeter Place
Boston, Massachusetts  02116


Signed under pains of perjury,_____

Jerry Coviello, pro se
71 North Road
Chelmsford, MA 01824
(978) 256- 1986
(978) 884-8513

*Attached no. 9*



# Town of Chelmsford
## Police Department



Raymond G. McCusker
Chief of Police

October 30, 2002

Mr. Gerald A. Coviello
52 Stedman Street
Chelmsford, MA 01824

Dear Mr. Coviello:

I am writing to inform you that Lt. James Murphy has reviewed your civilian complaint and has determined that it is unjustified.

A review of police officer reports surrounding your arrest give no credence to your allegations. Furthermore, I find it highly unusual that the complaint comes more than one year after the incident.

Yours truly,

Raymond G. McCusker
Chief of Police

230 North Road, Chelmsford, MA 01824
Telephone: 978 250-5255, FAX: 978 256-7094