

**FORENSIC ENGINEERS & TECHNOLOGISTS**

John M. Orlowski, P.E., CSP, BCFE, Director
11 Vanderbilt Avenue, Suite 120
Norwood, Massachusetts 02062-5056

PHONE: (781) 762-8377
FAX: (781) 762-1862
general@fet-forensics.com
www.fet-forensics.com

November 13, 2006

**TECHNICAL REPORT ADDENDUM TO**
    Gerald Coviello
    86 Richardson Rd.
    North Chelmsford, MA 01863

**SUBJECT**
    Review of Ms. Kathleen Redlund's report

**F.E.T. CONSULTANT ASSIGNED**
    Zed McLarnon, Senior Audio Visual and Computer Engineer.

**BACKGROUND**
IThe undersigned read the report(?) of Ms. Kathleen Redlund that Mr. Gerald Coviello forwarded to F.E.T. for review on October 22, 2006. Ms. Redlund's report is unsigned and is not on any sort of letterhead. A call was made to Ms. Redlund at Acorn Recording to verify if the report was authentic. She acknowledged that she was a sales person and not trained in forensic analysis of audio signals. Ms. Redlund stated only that the defendant's lawyers asked her some questions and she gave some answers.

Ms. Redlund's credentials:
I checked into Acorn Recording and they sell Eyretel recorders, the same audio recorder used by the Chelmsford Police Department to record and store all dispatch calls. Ms. Redlund is a saleswoman at Acorn Recording. I used the internet to check on her credentials, but could find none.

Report review:
Ms. Redlund's report is comprised of fabrications and false allegations. It is

The issue at the heart of Mr. Coviello's case is whether or not the Chelmsford Police dispatch audio recordings were edited. Specifically, an eye-witness saw Mr. Coviello leave the Hong Kong Restaurant and a police officer call in on her police radio immediately afterwards. I found physical evidence of edits at that point in time on the dispatch recordings I analyzed. However, Ms. Redlund's report does not address the physical evidence of audio edits that appear on Chelmsford Police's dispatch recordings. Ms. Redlund's report does not address the fact that several sections of the dispatch recordings were repeated.

**If the dispatch recordings were original recordings, as claimed by the Chelmsford Police Department, how could the recordings have sections that are repeated two or three times? This fact alone proves, in terms that a layman can understand, that the dispatch recordings were edited and manufactured from the original recording.**

Ms. Redlund's report does not address the many electro-mechanical spikes that occur before and after the repeated sections. These electro-mechanical spikes were generated onto the recordings as a result of a cassette recorder being placed into "stop mode" while dubbing (copying) the recording from one cassette recorder to another.

In Section 2 of Ms. Redlund's report, she makes a false claim by stating I used a computer program, "Soundscape Editor", to analyze the audio signals. In fact, I used a Soundscape Multitrack Digital Hard Disk Recorder. I have attached a scan of a section of the Soundscape brochure that contains a picture of the unit. The Digital Audio Workstation is comprised of two rack-mounted units and a computer monitor. As the Soundscape brochure states; it is Hard Disk Recording, Editing and Mastering system – not merely "editing software" for a computer as falsely alleged by Ms. Redlund.

Soundscape is a stand-alone hard disk audio recorder comprised of two (2) rack-mounted hardware units (an analog to digital converter and a hard disk recorder) with a computer interface that uses a computer monitor for read-outs only. The audio never enters the computer. The rack- mounted hardware does all of the processing and storage of the audio. This is the reason that Ms. Redlund states she does not know how the audio was transferred to my computer. It wasn't. It was transferred into the Soundscape Digital Multitrack Hard Disk Recorder for analysis.

2

Section 2:
I did not, as Ms. Redlund claims, "carefully edit" the display to hide the name of the computer program. As detailed above, Soundscape is not merely a computer program. In reality, the printouts were sized to display the greatest amount of resolution of the audio signals. Ms. Redlund's claim is a lie on her part, a fabrication meant to discredit me, personally.

In fact, Soundscape was bought out by Mackie Systems and is now marketed worldwide under the Mackie name and recognized as a leader in its field. There is no need for me to "hide" this world-class professional recorder.

Ms. Redlund falsely states that "tracks" are used by the recording industry and "channels" are used by the communications industry "for security". This, also, is untrue as "tracks" are the medium upon which audio is stored on all audio recorders. "Channels" exist on audio consoles and mixers through which the audio signal passes to and from recorders. Channels are used to control the volume and other parameters of the audio signal. This is very basic information. I would fail my college students if they did not know the difference between audio tracks and channels.

Soundscape is not merely a music recording computer program as claimed by Ms. Redlund. Yes, music can be produced on the unit, but many Soundscape/Mackie owners in the criminal justice system and other scientific laboratories use DAW's for scientific comparisons of audio signals, as reflected in my report. Corporations, also, have multi-track audio recording needs other than music production and of course movies and television use multi-track recordings to produce overlapping dialogue and sound effects.

Sections 3 & 4:
In these sections, Ms. Redlund misleads the court into believing that every generation of recording degrades the quality of the signal. This is untrue. Every digital recording is an exact copy of the original recording. This is an advantage digital recordings have over analog recordings. There is no hiss added or degradation in the quality of the audio signal in digital recordings.

The StateDataFile is a recording that was made from the Dispatch Recorder onto a cassette – a first-generation recording since the original recording was made on the Police department's digital recorder. The signal on the cassette

3

is as clean and clear as if the recording was made directly onto the cassette. The digital workstation I use does not degrade the recording from the cassette. The StateDataFile recording I analyzed and that appears in my report is a second-generation recording – **just like the cassette recordings of music albums sold in record stores.**

The BrattonCassette8.11.04 is a cassette recording of the original dispatch recording.

Section 4
Ms. Redlund offers no scientific evidence that a cassette recorder's capstan is responsible for the progressive slowing of signals from one recording to another. **If her allegation were true, no one would ever have bought a cassette of their favorite musical group.** Ms. Redlund's allegations are non-scientific.

Section 5:
Since the recordings weren't edited in the Eyretel recorder but copied onto a cassette recorder, dubbed (copied) and edited and then recorded back into the Eyretel, playing these recordings on the Eyretel would serve no purpose. The fact that all of the recordings are not the same and have sections that are repeated, proves none of the recordings were the original recordings but were copies that were edited and manufactured by the Chelmsford Police Department and then re-recorded onto the dispatch recorder to masquerade as the original recording.

Conclusion:
Ms. Redlund's report is non scientific and consists of false allegations, lies and misleading statements.

Submitted by,

*Jed McLarnon*
Jed McLarnon
Senior Audio/Visual and Computer Engineer.

4