UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JERRY COVIELLO,            )<br>          Plaintiff,              )<br>                                       )<br>V.                                      )<br>                                       )<br>TOWN OF CHELMSFORD, et al )   | C.A. NO.:  04 11901 MLW |

**DEFENDANTS JENNIFER FAY, GARY HANNAGAN, JAMES SPINNEY, FRANCES ROARKE, SCOTT UBELE, BERNARD LYNCH, RAYMOND MCCUSKER, AND THE TOWN OF CHELMSFORD'S MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56**

The defendants Jennifer Fay, Gary Hannagan, James Spinney, Frank Roarke, Scott Ubele, Bernard Lynch, Raymond McCusker and the Town of Chelmsford submit the following Memorandum of Law in support of their Motion for Summary Judgment.

**INTRODUCTION**

This action arises out of a routine traffic stop of the plaintiff by the Chelmsford Police Department on August 31, 2001.  Prior to the stop, the plaintiff was at the Hong Kong Restaurant with an acquaintance, Richard Fries ("Fries"). As the plaintiff and Fries were leaving the Hong Kong, Fries made inappropriate remarks to Officer Jennifer (Fay) Bellissimo ("Fay"), who was working a detail at the Hong Kong.  The plaintiff claims that Fay reported to the comments to the Chelmsford Police Department and the Chelmsford Police Officers Michael Horan ('Horan"), Gary Hannagan ('Hannagan") and Lieutenant James Spinney ("Spinney") subsequently stopped his motor vehicle in retaliation for the comments made by Fries.  The plaintiff further claims that during the stop, Horan assaulted him.

When the Chelmsford Police Department dispatch recordings revealed no calls made by Fay, the plaintiff amended his Complaint to add claims against Chelmsford Police Lieutenant Frank Roarke ('Roarke") and Deputy Chief Scott Ubele ('Ubele") alleging that they edited or manipulated the tapes to delete the call made by Fay.

As more fully argued below, the defendants are entitled to Summary Judgment on all Counts of the Complaint.

**I.    The Defendants Are Entitled to Summary Judgment On the Claims Asserted Against Defendant Jennifer Fay**

1

The plaintiff claims that Officer Fay reported the inappropriate remarks made by Fries to the Chelmsford Police Department, so that the police could stop his motor vehicle in order to intimidate, harass and/or assault and batter him. The defendants are entitled to summary judgment as the plaintiff has no evidence to support his claim against the defendant Fay.

The undisputed evidence is that on the night in question, the Chelmsford Police Department was conducting selective traffic enforcement in the area where the Hong Kong Restaurant is located. **(Exhibit 5)**. Fay was working a detail at the Hong Kong and as the plaintiff and Fries were leaving, Fries made some inappropriate comments to Fay. **(Exhibit 1 at pp. 29-30)**.

Although the plaintiff claims that Fay reported Fries' remarks to the Chelmsford Police in so that his vehicle could be stopped for the purpose of harassing or intimidating him, the plaintiff has absolutely no evidence to support his claims. The plaintiff did not see Fay use her radio after they left the Hong Kong. **(Exhibit 1 at pp. 30, 61-62)**. Moreover, Fay denies making any calls to the Chelmsford Police Department or anyone else on the night of this incident to report the remarks made by Fries and the Chelmsford Police Dispatch recordings confirm that no calls were made by Fay or anyone else about the remarks made by Fries. **(Exhibits 4 and 15)**. Fay never left the Hong Kong until she was assigned to assist with traffic after the stand off with the plaintiff so it would have been impossible for her to go to the police station and make any reports regarding the Fries' comments in person. **(Exhibit 4)**.

The plaintiff was subsequently stopped by Horan, not because of any transmission Horan received regarding Fries' remarks to Fay, but because the plaintiff's vehicle had a defective taillight and a defective exhaust and Horan observed him crossing the double yellow line as he was pulling him over. **(Exhibit 6)**. The plaintiff was cited for those motor vehicle violations **(Exhibit 9)**. Further, Horan never received any transmission from Fay or anyone else at the Chelmsford Police prior to stopping the plaintiff. **(Exhibit 7)**. In addition, neither Spinney nor Hannagan, who stopped to assist Horan, received any transmission regarding stopping the plaintiff's vehicle. **(Exhibits 9, 10, 11 and 12)**.

The **only** alleged evidence the plaintiff has to support his allegation that he was pulled over in retaliation for Fries' comments to Officer Fay is an alleged statement made by to the plaintiff's investigator that Ming Moy ("Moy") saw Fay use her radio after the plaintiff and Fries left the Hong Kong. However, Moy testified under oath that he never saw Fay use her radio and never told any investigator that he saw Fay use her radio. **(Exhibit 14 at pp. 16-18)**. Any such alleged statement by Moy is hearsay and therefore not admissible because the alleged statement was never reduced to writing, was not made under oath and he has since denied ever making any such statement. See Federal Rule of Evidence 801, Wright & Miller, <u>Federal Practice & Procedure</u> 30 B §7011.

Moreover, even if Moy did tell an investigator that he saw Fay use her radio, there is no evidence as to whom she called or what she said. There is

certainly no evidence to support plaintiff's claims that Officer Fay called the Chelmsford Police Department to report the remarks made by Fries so that the plaintiff could be pulled over and harassed, intimidated or assaulted. The plaintiff's claim that Officer Fay did so are based on nothing more than pure speculation and not supported by any admissible or credible evidence.

Inasmuch as the plaintiff does not have any admissible evidence to support his claims against Fay, she is entitled to summary judgment.

### II. The Defendants Are Entitled to Summary Judgment On the Claims Asserted Against Defendant Gary Hannagan

The plaintiff claims that Hannagan intercepted the alleged radio call made by Fay and pulled the plaintiff over to harass, intimidate and/or assault and batter him and took part in the stop in violation of his 4th Amendment rights.

Hannagan denies that he ever received any transmission on the night in question about stopping the plaintiff and there is no evidence of any transmission on the Chelmsford Police recordings. **(Exhibits 12 and 15).** Hannagan was only patrol and only stopped to assist Horan after he observed Horan stop the plaintiff's Mustang. It is undisputed that Hannagan's only involvement at the stop was speaking with Fries. **(Exhibit 11)**. Hannagan did not approach the plaintiff or speak with him; he only overheard the conversation between the plaintiff and Horan. **(Exhibit 1 at pp. 38-39 and Exhibit 11)**.

Inasmuch as there is no evidence that Hannagan received any transmission about stopping the plaintiff and he had no interaction with the plaintiff after the stop, Hannagan is entitled to summary judgment as there is no admissible evidence to support the plaintiff's claims against him.

### III. The Defendants Are Entitled to Summary Judgment On the Claims Asserted Against Defendant James Spinney

The plaintiff claims that Spinney intercepted the alleged radio call made by Fay and pulled the plaintiff over to harass, intimidate and/or assault and batter him and took part in the stop in violation of his 4th Amendment rights.

It is undisputed that Spinney was overseeing the selective traffic enforcement in the area of the Hong Kong on the night of the incident. **(Exhibit 5).** He became aware that Horan had stopped a vehicle, later identified as the plaintiff, and stopped to assist Horan **(Exhibit 9)**. Spinney denies that he ever received any transmission on the night in question about stopping the plaintiff. **(Exhibit 10)**.

According to Spinney, he was involved in speaking with the plaintiff, along with Officer Horan and he asked the plaintiff to exit his vehicle but the plaintiff refused. **(Exhibit 9)**. According to the plaintiff and Fries, Spinney put his hand in plaintiff's vehicle in an attempt to grab either the steering wheel or the keys. **(Exhibit 1 at pp. 38 and 39 and Exhibit 3 at p. 44)**. The plaintiff then

put the vehicle in gear and sped off. **(Exhibit 2 at pp. 13-15 and Exhibit 9)**. Assuming that Spinney did put his hand in the plaintiff's vehicle, that conduct does not rise to the level of an assault or battery. Further, there is no allegation by the plaintiff that Spinney engaged in any other conduct to violate the plaintiff's civil rights and there is no evidence to support such a claim.

Inasmuch as there is no evidence that Spinney received any transmission about stopping the plaintiff and there is no evidence that Spinney violated the plaintiff's civil rights, Spinney is entitled to summary judgment.

### IV. The Defendants Are Entitled to Summary Judgment On the Claims Asserted Against Defendant Michael Horan

The plaintiff claims that Horan intercepted the alleged radio call made by Officer Fay and pulled the plaintiff over to harass, intimidate and/or assault and batter him and committed an assault and battery upon him by grabbing his head and hair in violation of his 4th Amendment rights.

The defendant Horan is entitled to summary judgment on the plaintiff's claim that he intercepted a radio transmission from Fay and stopped the plaintiff in order to intimidate and harass him. **(Exhibits 6 and 7)**. Horan made a legitimate stop of the plaintiff for a defective taillight and a defective exhaust that plaintiff was subsequently cited for these violations. **(Exhibit 9).** Further, plaintiff has no evidence to prove that his taillight and exhaust were not defective. It appears that these citations were absorbed into the criminal process as there is no separate finding that the citations were dismissed. **(Exhibit 13).**

Further although plaintiff had his mother's friend, Lillian Clark ("Clark"), look at his vehicle after the incident, any observations by Clark are irrelevant as she has no training or experience with motor vehicles other than working on her own vehicle **(Exhibit 8 at pp. 9-10)**. In addition, she did not look at the plaintiff's vehicle until a day or two after this incident. Moreover, Clark only examined the plaintiff's vehicle by putting the key on accessory to determine if all the lights were working. She did not turn the engine on or drive the car so she cannot say whether or not the exhaust was defective nor if the taillight was defective once the car was in operation. **(Exhibit 8 at p. 12-16)**. Inasmuch as the plaintiff cannot establish that Horan stopped him in retaliation for the comments made by Fries or for some other unlawful purpose, Horan is entitled to summary judgment on that portion of the plaintiff's claims.

In addition, the plaintiff's assault and battery claims are barred by *res judicata* pursuant to the Agreement for Judgment filed in the District Court action. *Res judicata* "bars a subsequent action whenever three criteria are met: (1) there is a final judgment on the merits in an earlier action; (2) 'sufficient identity' exists between the parties in the earlier and later suits, and (3) 'sufficient identity' exists between the causes of action in the two suits. U.S. v. Cunan, 156 F. 3d 110 (1st Cir. 1998). Usually a court-approved settlement receives the same *res judicata* effect as a litigated judgment. In re Medomak Canning, 922 F. 2d 895

4

(1st Cir. 1990).  See also, Defendant Horan's Motion and Memorandum for Summary Judgment that the defendants incorporate herein.

In this case the plaintiff filed a civil action against the defendant Horan in Lowell District Court for assault and battery arising out of the same incident that forms the basis of this Complaint so the parties are identical (except for the additional defendants sued by the plaintiff) and the assault and battery claims are identical. After the plaintiff's attorney filed a Motion for Summary Judgment which was not opposed by the defendant, the parties agreed to allow judgment to enter against the defendant Horan and an Agreement for Judgment was filed with the Court specifically states that the judgment satisfied any claims the plaintiff may have against the defendant from all time up to and including December 3, 2004.  Since the subject incident occurred in 2001, any claims against the defendant arising out of the subject incident are now barred.  Summary judgment should be entered on the claims against Horan.

As the claims against Horan for assault and batter are barred by *res judicata,* the plaintiff cannot proceed against the Town of Chelmsford for these same claims.

V.  **The Court Should Strike The Report of the Plaintiff's Expert McLarnon and His Proposed Testimony and Grant Summary Judgment On the Claim Asserted Against Defendant Frank Roarke**

The plaintiff claims that Roarke edited a copy of the so-called "turret tapes" of the calls made to the Chelmsford Police Department on the night of the incident.

In order to prove this claim, the plaintiff must introduce admissible expert testimony as the Chelmsford Police Department audio recording system is not a matter that is within the common knowledge of laypersons.  See, Alves v. Mazda Motor of America, Inc., 448 F.Supp. 285, 297 (D. Mass 2006).

In determining whether proposed expert testimony is admissible, the Court "must act as a gatekeeper to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'"  Alves at 298 quoting Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

The report and proposed testimony of the plaintiff's expert, Zed McLarnon ("McLarnon"), should be stricken and summary judgment granted on the claims against the defendant Roarke because neither Mr. McLarnon's report nor his proposed testimony are reliable pursuant to Daubert.

The Court may admit a qualified expert's testimony under three conditions.  "First, the expert's 'specialized knowledge' must 'assist the trier of fact to understand the evidence or to determine a fact in issue'; second the testimony must be 'based upon sufficient facts or data'; third, the testimony must be 'the product of reliable principles and methods' which the witness must have

5

applied 'reliably to the facts of the case.'" Alves at p. 298 quoting Fed. R. Evid. 703.

In this case, the testimony and report of McLarnon are not admissible as they do no satisfy any of the conditions required by the Federal Rules of Evidence or Daubert.

First, McLarnon does not have specialized knowledge which would assist the trier of fact. McLarnon's resume indicates he is a Senior Staff consultant in Audio/Visual and Computer Engineering. **(Exhibit 18)**. It appears that most of his experience has been in the music and television industry. **(Exhibit 18)**. His resume reflects no experience with Public Service Answering systems such as the Eyretel system at issue in this case. **(Exhibit 18)**. There is no evidence that McLarnon has any training or experience with the Eyretel system used by the Chelmsford Police Department. **(Exhibit 18)**. In contrast, the defendants' expert, Kathleen Redlund ("Redlund) has extensive training and experience with 9-1-1 systems and in particular with the Eyretel system in use by the Chelmsford Police Department at the time of this incident. **(Exhibit 21)**.

In addition, it appears that McLarnon is biased as he claims to be a victim of the very type of "tape editing" which he and the plaintiff accuse the defendants of. McLarnon was a plaintiff in a Federal Court C.A. No.: 1:02-cv-11200-DPW, McLarnon v. Sean M. Dunphy et al. **(Exhibit 20)**. In that case, McLarnon accuses various court employees and judges of wrongdoing regarding restraining order and divorce proceedings that occurred in the Concord District Court and the Middlesex Probate and Family Court. **(Exhibit 20)**. McLarnon alleges, among other things, that court employees edited the tapes of various hearings to remove material that was damaging to his ex-wife and helpful to him. **(Exhibit 20)**.

Second, McLarnon's proposed testimony and his report are not based upon sufficient facts or data. In his report, McLarnon indicates that his opinion that the portions of the tapes were deleted and that the CD rom was manipulated was based upon the alleged statements made by Moy to the plaintiff's investigator that he saw Fay walk toward the door when the plaintiff and Fries left and saw her use her radio. The statements by the investigator are hearsay and not admissible, as noted above, as Moy has testified under oath that he never saw Fay use her radio and denied ever making any such statement to an investigator. **(Exhibit 14 at pp. 16-18)**. Moreover, even if Moy did tell an investigator that he saw Fay use her radio on the night in question, there is no evidence that Fay made any calls to the Chelmsford Police Department to report Fries' remarks which then led the Chelmsford Police Department to make an invalid stop of the plaintiff in order to intimidate and harass him.

Further, McLarnon's opinion that a comparison of the marker lines show dead spots or breaks in the recordings which led him to conclude that at least twenty dispatch transmissions and/or calls by Fay were removed from the Bratton Cassette by the Chelmsford Police Department is based upon faulty facts and data.

6

First, the tapes used by McLarnon for comparison were re-recorded multiple times on an analog tape recorder. As Redlund indicates, analog tape decks have capstan drives that start and stop the tape and to coordinate with the calls can cause them to be out of synchronization as the tapes need to tighten the slack of tape before going over the record head to begin recording.  **(Exhibit 21)**.

Second, according to Redlund, the time variances which McLarnon refers to and relies upon were caused by re-recording the calls several times on an analog tape deck so they should not have been used as comparisons to the CD copy (Coviello 6.16L) which is the audio CD produced by then Lieutenant Ubele which was made with Eyretel software by locating calls and copying them onto the CD. **(Exhibit 21)**.

Third, McLarnon's opinion is based upon a faulty assumption that the Chelmsford Police Department audio recordings can be edited or manipulated.  According to Ms. Redlund, the Eyretel DAT tape must remain intact to play calls on it.  If a DAT tape was edited, it would not play and would come up as an invalid index on the display or default.  The DAT tape was not edited, as Lieutenant Ubele was able to make a copy of it while McLarnon watched.  **(Exhibits 19 and 21)**.

The Court must also consider whether the "reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology can properly be applied to the facts in issue."  Id. at 592-593.  Many factors must be considered, including whether a theory or technique can or has been tested, whether the theory or technique has been subjected to peer review and publication, the known or potential rate of error in the case of a particular scientific technique and whether the theory or technique has been generally accepted by the scientific community.  Id. at 592-594.

The reasoning and methodology underlying McLarnon's opinion is not scientifically valid and cannot properly be applied to the facts in this case. A noted above, McLarnon relies upon an allegation made by the plaintiff that Fay made a call to the Chelmsford Police Department to report the comments made by Fries and have the plaintiff stopped in retaliation for those comments.  There is no factual support for this allegation as Fay denies she made any calls and the officers involved in the stop deny receiving any calls.  Further, although Moy allegedly told an investigator that he saw Fay use her radio, that information is not only hearsay, it is irrelevant as there is no evidence who Officer Fay allegedly called or what she said.

Further, the reasoning and/or methodology used by McLarnon to compare copies of audio recordings erroneously attempted to compare analog tapes which had been re-recorded to the CD rom made using the proprietary Eyretel software, which was like comparing apples to oranges.  In addition, according to Redlund, the Eyretel system used by the Chelmsford Police Department cannot be edited and if there had been an attempt to do so, the recording would come up as invalid or not intact and would not play at all.

Since the recording did not come up as invalid or not intact when a copy was made while McLarnon watched, there is no evidence of any editing or manipulation as alleged by the plaintiff. **(Exhibits 19 and 21)**.

Absent McLarnon's testimony, the plaintiff has no evidence to support his claim that the tape or CD-rom was edited or manipulated by the defendant Roarke, therefore the defendant Roarke is entitled to summary judgment.

**VI.   The Court Should Strike The Report of the Plaintiff's Expert McLarnon and His Proposed Testimony and Grant Summary Judgment On the Claim Asserted Against Defendant Scott Ubele**

The plaintiff claims that Ubele edited or manipulated a copy of the CD-rom copy of the audio recordings of the Chelmsford Police Department.  For the same reasons set forth above with regard to the defendant Roarke, the defendant Ubele is entitled to summary judgment, as there is no evidence that the CD-rom has been edited or manipulated.

**VII.  The Defendants Are Entitled to Summary Judgment On The Claims Against The Town Of Chelmsford, McCusker and Lynch**

The plaintiff makes no specific claims against the Town of Chelmsford, McCusker and Lynch.  However, if the plaintiff is asserting 4th Amendment claims similar to those made against the officers involved in the stop, the town is entitled to summary judgment as the plaintiff has no evidence to support any claims against the town.

The Town of Chelmsford is only liable on a civil rights claims if the plaintiff proves that the city had a custom, policy or practice of hiring, training, or supervising its officers that was deliberately indifferent to the constitutional rights of its citizens and that custom, practice and policy caused the plaintiffs to suffer constitutional deprivations.  City of Canton v. Harris, 489 U.S. 378, 392 (1989); Santiago v. Fenton, 891 F.2d 373, 381 (1st Cir. 1989); Manarite v. City of Springfield, 957 F.2d 953, 958-959 (1st Cir.), cert. denied, 506 U.S. 837 (1992).  A showing of simple or even heightened negligence will not suffice.  Bryan County Comm'rs v. Brown, 137 L.Ed. 2d 626, 641 (1997).

In this case, the plaintiff's constitutional claims must fail. The plaintiff cannot establish any constitutional violations by the defendants Fay, Hannagan or Spinney. Further, even if the judgment against the defendant Horan establishes a constitutional deprivation by Horan the Town of Chelmsford is not liable as the plaintiff will be unable to establish that the city had a custom, policy or practice of hiring, training, or supervising its officers that was deliberately indifferent to the constitutional rights of its citizens and that custom, practice and policy caused the plaintiff to suffer constitutional deprivations.  The plaintiff has conducted no discovery therefore he has no evidence to support this claim.

Absent any evidence of a custom, policy or practice of hiring, training or supervising that was deliberately indifferent to the plaintiffs' constitutional

rights which caused the plaintiff to suffer constitutional deprivations, the Town of Chelmsford is entitled to summary judgment.

As there is absolutely **no** evidence against Defendants Lynch and McCusker to support any claims of the plaintiff, summary judgment should be entered for both of them.

### VIII. The Defendants Fay, Hannagan and Spinney Are Entitled Qualified Immunity

The defendants Fay, Hannagan and Spinney can only be liable to the plaintiff if a reasonable police officer would have known that they were violating clearly established law on September 1, 2001.  See Harlow v. Fitzgerald, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982) (government official asserting qualified immunity must establish that his conduct did "not violate clearly established statutory or constitutional rights of which a reasonable person would have known").

As argued above, there is no evidence that Fay, Hannagan or Spinney violated any clearly established statutory or constitutional rights of the plaintiff on the night in question.  Fay denies she made any calls to the police department after Fries made his pass and there is no credible or admissible evidence to support this allegation.   There is no evidence that Hannagan or Spinney intercepted any alleged call made by Fay and the plaintiff has not established any other conduct by Hannagan or Spinney which constitutes a constitutional violation, they merely assisted Horan after he stopped the plaintiff for motor vehicle violations.

Therefore defendants Fay, Hannagan and Spinney are entitled to qualified immunity as there is no evidence that they violated any clearly established statutory or constitutional rights of the plaintiff.

### CONCLUSION

For the foregoing reasons, the defendants entitled to summary judgment on counts of the plaintiff's Complaint and any amendments thereto.

                                      Respectfully submitted,

                                      The defendants,
                                      By their attorneys,

                                      __/s/ Jeremy Silverfine_____
                                      Jeremy I. Silverfine, BBO#542779
                                      Leonard H. Kesten, BBO#542042
                                      Brody, Hardoon, Perkins & Kesten, LLP
                                      One Exeter Plaza, 12th Floor
                                      Boston, MA 02116
Date: 3-2-07                        (617) 880-7100