Exhibit no. 1

Kathleen Redlund
7 Keezer Lane
Newton, NH  03858

Summary:

Recognized by peers and customers for commitment and persistence to success in the Digital Recording Market.  Proven ability by continual growth of the company since the initial formation in 1998.

Education:
High School graduate    1968
Sales training, Lanier Worldwide  1989
LVL 10/20 VHS Recorder training  1990
Advocate Recorder training  1991
LDL 848 Recorder training   1993
Exacom Recorder training 1995
Eyretel Recorder training 1998
Teac Recorder training 1999
ASC Recorder training  2000
Magnasync Recorder training  2002 & 2004
DSS Recorder training 2004
HighGround Recorder training  2005
DigiOp Recorder training 2005

Experience:
Sales Representative for Major Accounts,  Lanier Worldwide    1989-1998
Sales of  various recording equipment, such as digital dictation systems, voice loggers and facsimile systems.  Top sales person for the company, winning many sales awards. Assisted in the final phase of voice logger sales for Lanier.


President, Acorn Recording Solutions, Inc.   1998 – Present
-Established Acorn Recording Solutions, Inc with former customer base at Lanier Worldwide.
-Expanded with new products and established a service plan for customers.
-Initiated web site for further business.
-Expanded sales to all of New England directly
-Expanded service and sales to Nationwide with internet
-Secured a large contract 9-1-1 service contract 9/03
-Became certified as WBENC 2003

113 S.Ct. 2786 Page 2
125 L.Ed.2d 469, 61 USLW 4805, 27 U.S.P.Q.2d 1200, 23 Envtl. L. Rep. 20,979,
37 Fed. R. Evid. Serv. 1, Prod.Liab.Rep. (CCH) P 13,494
**(Cite as: 509 U.S. 579, 113 S.Ct. 2786)**

Exhibit no. 2

Supreme Court of the United States

**William DAUBERT, et ux., etc., et al., Petitioners,**
**v.**
**MERRELL DOW PHARMACEUTICALS, INC.**

**No. 92-102.**

Argued March 30, 1993
Decided June 28, 1993.

Infants and their guardians ad litem sued pharmaceutical company to recover for limb reduction birth defects allegedly sustained as result of mothers' ingestion of antinausea drug Bendectin. The United States District Court for the Southern District of California, 727 F.Supp. 570, granted company's motion for summary judgment, and plaintiffs appealed. The Court of Appeals, 951 F.2d 1128, affirmed. Plaintiffs filed petition for writ of certiorari, which was granted. The Supreme Court, Justice Blackmun, held that: (1) "general acceptance" is not necessary precondition to admissibility of scientific evidence under Federal Rules of Evidence, and (2) Rules assign to trial judge the task of ensuring that expert's testimony both rests on reliable foundation and is relevant to task at hand.

Vacated and remanded.

Chief Justice Rehnquist filed opinion concurring in part and dissenting in part in which Justice Stevens joined.

West Headnotes

**[1] Evidence ⚿ 150**
157k150
Federal Rules of Evidence superseded Frye "general acceptance" test for admissibility of scientific evidence. Fed.Rules Evid.Rule 702, 28 U.S.C.A.

**[2] Federal Civil Procedure ⚿ 21**
170Ak21
Supreme Court interprets legislatively enacted Federal Rules of Evidence as it would any statute.

**[3] Evidence ⚿ 99**
157k99
Basic standard of relevance under Federal Rules of Evidence is liberal one. Fed.Rules Evid.Rules 401, 402, 28 U.S.C.A.

**[4] Evidence ⚿ 150**
157k150
Rigid "general acceptance" requirement for admission of scientific evidence would be at odds with "liberal thrust" of Federal Rules of Evidence and their general approach of relaxing traditional barriers to "opinion" testimony. Fed.Rules Evid.Rule 702, 28 U.S.C.A.

**[5] Evidence ⚿ 150**
157k150
Trial judge is not disabled under Federal Rules of Evidence from screening purportedly scientific evidence. Fed.Rules Evid.Rule 702, 28 U.S.C.A.

**[6] Evidence ⚿ 150**
157k150
Under Federal Rules of Evidence, trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable. Fed.Rules Evid.Rule 702, 28 U.S.C.A.

**[7] Evidence ⚿ 150**
157k150
"Scientific," within meaning of Federal Rule of Evidence stating that if "scientific," technical, or other specialized knowledge will assist trier of fact to understand evidence or to determine fact in issue an expert may testify thereto, implies grounding in methods and procedures of science. Fed.Rules Evid.Rule 702, 28 U.S.C.A.

**[8] Evidence ⚿ 508**
157k508
"Knowledge," within meaning of Federal Rule of Evidence stating that if scientific, technical, or other specialized "knowledge" will assist trier of fact to understand evidence or to determine fact in issue an expert may testify thereto, connotes more than subjective belief or unsupported speculation. Fed.Rules Evid.Rule 702, 28 U.S.C.A.

**[9] Evidence ⚿ 508**
157k508
Subject of scientific knowledge need not be

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo

See next page →

"known" to certainty to permit expert testimony, since, arguably, there are not certainties in science. Fed.Rules Evid.Rule 702, 28 U.S.C.A.

**[10] Evidence ⟹ 508**
157k508
Inference or assertion must be derived by scientific method to qualify as "scientific knowledge," within meaning of Federal Rule of Evidence stating that if scientific, technical, or other specialized knowledge will assist trier of fact to understand evidence or to determine fact in issue an expert may testify thereto. Fed.Rules Evid.Rule 702, 28 U.S.C.A.

**[11] Evidence ⟹ 555.1**
157k555.1
For scientific testimony to be admitted, proposed testimony must be supported by appropriate validation, in other words, "good grounds" based on what is known. Fed.Rules Evid.Rule 702, 28 U.S.C.A.

**[12] Evidence ⟹ 508**
157k508
Requirement under Federal Rule of Evidence that expert's testimony pertain to "scientific knowledge" establishes standard of evidentiary reliability. Fed.Rules Evid.Rule 702, 28 U.S.C.A.

**[13] Evidence ⟹ 150**
157k150
In case involving scientific evidence, evidentiary reliability will be based upon scientific reliability. Fed.Rules Evid.Rule 702, 28 U.S.C.A.

**[14] Evidence ⟹ 150**
157k150
Condition for admission of scientific evidence or testimony under Federal Rule of Evidence, that evidence or testimony assist trier of fact to understand evidence or to determine fact in issue, goes primarily to relevance. Fed.Rules Evid.Rule 702, 28 U.S.C.A.

**[15] Evidence ⟹ 150**
157k150
In determining admissibility of scientific evidence or testimony, scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes. Fed.Rules Evid.Rule 702, 28 U.S.C.A.

**[16] Evidence ⟹ 150**
157k150
"Helpfulness" standard under Federal Rule of Evidence for admissibility of scientific evidence or testimony requires valid scientific connection to pertinent inquiry as precondition to admissibility. Fed.Rules Evid.Rule 702, 28 U.S.C.A.

**[17] Evidence ⟹ 505**
157k505
Unlike ordinary witness, expert is permitted wide latitude to offer opinions, including those that are not based on first-hand knowledge or observation. Fed.Rules Evid.Rules 701-703, 28 U.S.C.A.

**[18] Evidence ⟹ 508**
157k508
Presumably, relaxation under Federal Rules of Evidence of usual requirement of first-hand knowledge when there is testimony by expert is premised on assumption that expert's opinion will have reliable basis in knowledge and experience of his discipline. Fed.Rules Evid.Rules 701-703, 28 U.S.C.A.

**[19] Evidence ⟹ 508**
157k508
Faced with proffer of expert scientific testimony, trial judge must determine at outset whether expert is proposing to testify to (1) scientific knowledge that (2) will assist trier of fact to understand or determine fact in issue; preliminary assessment must be made of whether reasoning or methodology underlying testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to facts in issue. Fed.Rules Evid.Rules 104(a), 702, 28 U.S.C.A.

**[20] Evidence ⟹ 546**
157k546
Preliminary questions concerning qualification of person to be witness, existence of privilege, or admissibility of evidence should be established by preponderance of proof. Fed.Rules Evid.Rules 104(a), 702, 28 U.S.C.A.

**[21] Evidence ⟹ 150**
157k150
Requirements for admissibility of scientific testimony or opinion under Federal Rule of Evidence do not apply specially or exclusively to unconventional evidence. Fed.Rules Evid.Rule 702, 28 U.S.C.A.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo

Exhibit no. 3

**Acorn Recording Solutions** P.O. Box 987 Plaistow, NH 03865

October 2, 2006 ← How come I didn't get it until Nov. 9th 06 ?

Dear Attorney Silverfine;

RE: Acorn Recording Solutions Inc. Report

It is reported by Zed McLarnon of Forensic Engineers & Technologists in August of 2005 that four recordings of the Chelmsford Public Safety dispatch were inspected. It is allegedly claimed by Mr McLarnon that these recording were manufactured.

I dispute that claim for the following reasons:

1) A turret tape is a very old term for the Police dispatch tapes. This is when large reel to reel recorders were used to archive the calls to tape. This type of recorder uses a reel of tape that could record several channels simultaneously. The major difference to the dat tape technology used in Chelmsford is that the reel to reel tapes, or "turret" as Mr. McLarnon refers to is that they record linearly on each tape. An example of a turret tape would be as follows. Channel one would always be recorded on the track that was on one of the edges of the tape. Track two, would be channel two etc. Dat tape technology used in Chelmsford is similar to a "mini hard drive". Each dat tape has six separate sections and when a call is replayed it must have all sections intact to replay at all. The proprietary software by Eyretel, the manufacturer of the recorder, is designed to not allow editing of a dat tape. Editing can of course be accomplished when you re record to a cassette tape or to an editing program.

2) Program used by Mr McLarnon for analysis of Audio Recordings.

   Copies of audio recordings were re recorded to Mr McLarnon's Digital Audio Workstation (DAW). How was this transfer accomplished? The first page on Appendix 8 displays "**SoundScape Editor**" as the program Mr. McLarnon is using. "Song position" is a label in the program at the bottom of the page. All of the pages except one were carefully edited to not display the program name at the top and song position at the bottom. SoundScape is a program used in the music industry for editing! The music industry uses tracks for recording. The

communication recording industry use channels for security. The proprietary software by Eyretel, the recorder manufacture, is a trusted program by hundreds of companies and departments worldwide for replay of the calls and displaying the call records with the Browser Report. Acorn Recording has worked with many very respected agencies that use the Eyretel system. FBI Boston, FBI Quantico VA, US Attorneys Office, and FERC.

3) Recordings used for comparison:

**StateDataFile** is a copy made after re recording it three times. Original call then onto the cassette tape then onto the DAW.

**Tape #2 District Atty** is also a copy after re recording it three times. Original call then onto the cassette for Attorneys Wyman and Foley then onto the DAW.

**Coviello 6.16L** is an audio CD which was produced by Lt. Ubele with Mr McLarnon observing. This was produced by the Eyretel software locating the calls and copying them to the CD. A print out of the call files was also presented to Mc McLarnon. (Browser Report). I can attest that there is no way to edit the calls in this report.

**BrattonCassette8.11.04** this is another cassette tape produced simultaneously to the Coviello 6.16L CD. The clarity of this cassette will not be as good as the CD. This is evident in the print out of Appendix 7.

4) Time variances in the four recordings is a result of re recording the same calls multiple times. Cassette recorders have capstan drives that start and stop recording. That is why when you have a tape deck that gets old it slurs or even sometimes accelerates the speed of the audio; it is mechanical and breaks down.

5) I would recommend the original dat tape be played in court in an Eyretel recorder, with the Eyretel software and directly from the recorder.

5) Appendix 5 is improperly labeled.

**Fig 2** Scanner is not part of the recorder, the Eyretel Recorder is only the beige unit with the two dat drives. Ancillary gear as listed is the 9-1-1 equipment.

**Fig.4** Lt Ubele has his hand on an Omnirom cassette recorder, it is not an Eyretel E1000 Recorder with the dat drives. This is only a cassette recorder to make tape recordings from the Eyretel.

**Fig 5** is software that was installed onto Lt. Ubele's computer as a program to search and replay calls from the Eyretel E1000 not the black unit as listed. (The black unit is the Omnicrom cassette recorder)

6) Browser Report for 8/30/01 – 9/1/01 shows all the activity for several channels From the Eyretel Recorder. Channels 4, 9 & 10. Channel 4 is the APU 4, which is the 9-1-1 telephone (note dialed out digits at 12:08 AM). This print out shows all activity on these channels. Many companies or departments print this and follow along as they listen to the calls. You will hear and see the calls on the screen with the software.

7) Repeated sections are mentioned starting at 4:27:13 but the printed report for that time is not included in the report. I can not speculate on this without the printed report for the time in question, remember radio can be heard thru the telephone handset if off hook.

Respectfully submitted,

Kathleen Redlund
President, Acorn Recording Solutions Inc.

Exhibit no. 4

their request for document production (Dkt. No. 82) is ALLOWED. By September 14, 2006, the plaintiff shall allow the defendant to inspect and copy all documents in his control or possession that were requested in the defendants' Document Request Nos. 1-3, 5-19, 24, 28, and 33. In addition, the defendants shall, by September 21, 2006, file an affidavit itemizing "the reasonable expenses incurred in making the motion" to compel. Fed. R. Civ. P. 37(a)(4). If the plaintiff wishes to dispute these expenses or to argue that his failure to respond was "substantially justified," that the defendants filed their motion without first attempting to obtain discovery without the court's intervention, or that sanctions would otherwise be unjust, he shall, by October 6, 2006, file an affidavit and supporting memorandum explaining why the court should not impose sanctions.

6. The court is not now deciding the defendant's motion to compel the plaintiff to provide expert reports (Dkt. No. 70). However, the plaintiff shall, by August 28, 2006, file copies of each expert's report. The defendants shall serve their rebuttal expert reports by September 28, 2006. The court will consider at the next hearing whether it is appropriate to impose sanctions on either party related to this motion to compel.

7. The plaintiff's motion for expert witness fees (Dkt. No. 71) is ALLOWED. Coviello shall obtain an itemized invoice from his experts listing with particularity how much time each expert

Exhibit no. 5

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JERRY COVIELLO, Plaintiff,

V.

TOWN OF CHELSMFORD, et al Defendants.

C.A. NO.: 04 11901 MLW

**DEFENDANTS' MOTION FOR ADDITIONAL TIME TO SERVE PLAINTIFF WITH DEFENDANTS' REBUTTAL EXPERT REPORTS**

Now comes the Defendants in the above-referenced matter and request this Honorable Court allow an additional two weeks for the Defendants to serve the Plaintiff with their rebuttal expert reports as ordered by this Court on August 14, 2006, (see Document 97 of this case, p. 16, Section X "Order", Paragraph Number 6).

As reasons therefore, the defendants state that they received the plaintiff's experts' reports in late August per order of this court but have not yet received their own experts' reports. The names and curriculum vitaes of the defendants' rebuttal experts have been previously provided to the plaintiff. The discovery deadline in this case is now December 31, 2006. The Defendants request an additional 14 days until October 13, 2006 to serve the plaintiff as requested by this Court.

Respectfully submitted
The Defendants
By their attorneys,

/s/ Jeremy I. Silverfine

Jeremy I. Silverfine, BBO #542779
Leonard H. Kesten, BBO #542042
Brody, Hardoon, Perkins & Kesten, LLP
One Exeter Plaza
Boston, MA 02116
(617) 880-7100

Date: September 28, 2006

Exhibit no. 6

# Brody, Hardoon, Perkins & Kesten, LLP

Attorneys at Law

Richard E. Brody
Laurence E. Hardoon
Samuel Perkins
Leonard H. Kesten
Jocelyn M. Sedney

Of Counsel:
Cheryl A. Jacques
Maria E. DeLuzio

One Exeter Plaza
Boston, Massachusetts 02116

Telephone 617-880-7100
Facsimile 617-880-7171
www.bhpklaw.com

Judy A. Levenson
Jeremy I. Silverfine
Sherri Gilmore Bunick
Deidre Brennan Regan
Deborah I. Ecker
Pamela J. Fitzgerald
Djuna E. Perkins
Thomas P. Campbell
Peter E. Montgomery
Andrew S. Brooslin
Kristin Tyler Harris

Administrator:
Elizabeth L. Joyce

November 9, 2006

Jerry Coviello
86 Richardson Road, #1
N. Chelmsford, MA 01863

RE: Jerry Coviello *pro se*
VS: Town of Chelmsford Police Department, et al
U.S. District Court Civil Action no.: 04-11901-MLW

Dear Mr. Coviello:

Pursuant to your recent request for a **signed copy** of **Kathy Redlund's report**, enclosed please find a copy of same relative to the above-captioned matter.

As a follow-up to my last letter dated October 30, 2006, please be advised that I intend to file a Motion to Compel regarding the documents that are missing from Plaintiff's response to the Defendants' Request for Production of Documents.

Very truly yours,

Jeremy I. Silverfine

JIS: hjo
cc: Gerry Fabiano, Esq.

Exhibit no. 7

United States District Court,
D. Massachusetts.

**Eduarda ALVES, Plaintiff,**
**v.**
**MAZDA MOTOR OF AMERICA, INC., Mazda Motor Corporation, Defendants.**

**C.A. No. 02-11136-MLW.**

Aug. 21, 2006.

Background: Automobile accident victim sued automobile manufacturer and seller on theories of negligent and defective design, failure to warn and breach of implied warranty, asserting that an air bag which deployed during the accident hit her in the eyes and caused her to become blind. Defendants moved to preclude evidence and for summary judgment.

Holdings: The District Court, Wolf, J., held that The District Court, J., held that: (1) experts' evidence would be excluded as a sanction for untimely disclosure; (2) experts' testimony was not admissible in any event; and (3) even if admissible, the expert evidence would not have established the victim's claims.

Motion allowed.

West Headnotes

**[1] Federal Civil Procedure ⚿ 1278**
170Ak1278
Evidence of automobile accident victim's experts would be precluded because of their late disclosure in the victim's action against the automobile manufacturer and seller on theories of negligent and defective design, failure to warn and breach of implied warranty; victim's attorney missed many deadlines for expert disclosure, never sought an extension from the court before the deadline had passed and misrepresented material facts in an effort to evade the granting of a prior motion to preclude, the victim neither provided any substantial justification for the untimely disclosure nor proved that the late disclosures were harmless, and exclusion of the evidence would not materially affect the outcome of the case. Fed.Rules Civ.Proc.Rules 26(a)(2), 37(c)(1), 28 U.S.C.A.

**[2] Federal Civil Procedure ⚿ 1278**
170Ak1278
Under the rule generally providing for exclusion of a party's experts unless she had "substantial justification" for disclosing them late or unless her late disclosure was "harmless," the party making late disclosure has the burden of proving substantial justification or harmlessness. Fed.Rules Civ.Proc.Rule 37(c)(1), 28 U.S.C.A.

**[3] Federal Civil Procedure ⚿ 1278**
170Ak1278
Expert preclusion orders fall in the heartland of case management decisions, the area where a trial judge has the remorseless responsibility, evenhandedly and efficiently, to govern, monitor, and police the progress of an endless line of cases through the court. Fed.Rules Civ.Proc.Rule 37(c)(1), 28 U.S.C.A.

**[4] Federal Courts ⚿ 823**
170Bk823
Court of Appeals must consider a multiplicity of pertinent factors when reviewing the exclusion of expert evidence for failure to timely disclose experts, including the history of the litigation, the proponent's need for the challenged evidence, and the opponent's ability to overcome its adverse effects; surprise and prejudice are important integers in this calculation, as is an assessment of what the late disclosure portends for the court's docket. Fed.Rules Civ.Proc.Rules 26(a)(2), 37(c)(1), 28 U.S.C.A.

**[5] Evidence ⚿ 555.8(1)**
157k555.8(1)

**[5] Federal Civil Procedure ⚿ 2541**
170Ak2541
Automobile accident victim's experts, who concluded that the victim's air bag should not have deployed and that it was defective, did not use a methodology that was reliable under the circumstances or apply their methodology reliably to the facts of the case, and thus, their deposition testimony was not admissible in response to a defense motion for summary judgment; the experts, based on photographs, estimated the amount of damage to the automobile, and used that to estimate a barrier equivalent velocity based on a methodology set forth in a paper, but the paper itself indicated

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Wo