UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JERRY COVIELLO,         ) | | |
|     Plaintiff,              ) | | |
|                                   ) | | |
| V.                                  ) | C.A. NO.:  04 11901 MLW | |
|                                   ) | | |
| TOWN OF CHELSMFORD, et al  ) | | |

### THE DEFENDANTS, JENNIFER FAY, GARY HANNAGAN, JAMES SPINNEY, FRANCIS ROARKE, SCOTT UBELE, BERNARD LYNCH, RAYMOND MCCUSKER AND THE TOWN OF CHELMSFORD'S OPPOSITION TO THE PLAINTIFF'S SUMMARY JUDGMENT

The defendants, Jennifer Fay, Gary Hannagan, James Spinney, Francis Roarke, Scott Ubele, Bernard Lynch, Raymond McCusker and The Town of Chelmsford hereby submit the following opposition to the Plaintiff's Motion for Summary Judgment.

As the defendants argue in their Motion and Memorandum in support of Summary Judgment, the court should dismiss the plaintiff's claims as there is no evidence to support the plaintiff's claims that Officer Fay ("Fay") called the Chelmsford Police Department after the comments made by Mr. Fries ("Fries") and there is no evidence to support the plaintiff's claims that the audiotapes of the Chelmsford Police Department recordings for the night in question were edited and/or manipulated by the Chelmsford Police Department.

**The Alleged Call Made By Fay**

In what appears to be the plaintiff's introductory paragraphs on pages 1-3 of his Motion for Summary Judgment, the plaintiff states that as he and Fries got into the plaintiff's car which was parked within sight of the front door area, they were being watched by Fay who used her radio to communicate to other officers and/or dispatch

1

to "pull over"/stop the plaintiff's car for purposes of intimidation, harassment and/or assault and battery in retaliation for Fries' comment.

As previously asserted, the plaintiff has no evidence to support his allegation that Fay used her radio to communicate with other officers and/or dispatch in order to pull the plaintiff over in retaliation for Fries' comments. The undisputed evidence establishes only that Fay was working a detail at the Hong Kong restaurant on the night of the incident and was subjected to inappropriate comments by Fries. There is no evidence to support plaintiff's claim that Fay made any communication with any officers and/or dispatch. Although the plaintiff claims that his investigator, William Winn ("Winn"), interviewed Mr. Moy ("Moy") in August of 2002, and Moy allegedly told Winn that he remembered Fay walking towards the door when Fries left and that he saw Fay use her radio, Winn never memorialized this alleged statement and it is not admissible because it is hearsay. Moreover, Moy has since been deposed and has denied meeting with an investigator and has denied that he ever saw Fay use her radio or telling anyone he saw Fay use her radio. In addition, as the defendants previously argued, even assuming Moy made did see Fay use her radio, there is no evidence as to who Fay called or what she said. Therefore, the plaintiff's assertion that Fay used her radio to communicate to other Chelmsford police officers and/or dispatch is based on nothing more than pure speculation.

**The Stop of Plaintiff's Vehicle**

Plaintiff also claims that his vehicle was stopped without cause. According to Horan's report, plaintiff was stopped during a selective traffic enforcement by the Chelmsford police department because of a defective exhaust and a defective tailpipe. The only evidence plaintiff has to support his claim that his vehicle was stopped without cause is the testimony of his mother's friend, Lillian Clark ("Clark") who

2

looked at the plaintiff's vehicle a day or two after the incident. As the defendants contend in their Summary Judgment Memorandum, any observations by Clark are irrelevant as she has no training nor experience with motor vehicles other than working on her own vehicle. In addition, Clark did not look at the plaintiff's vehicle until a day after the incident and never turned on the engine or drove the car so she cannot say whether or not the exhaust was defective nor if the taillight was defective once the car was in operation.

**The Chelmsford Dispatch Audio Recordings**

Plaintiff claims that his attorney was given a copy of the audio recordings for the night of the incident in the form of a cassette tape and that his expert, Zed McLarnon ("McLarnon") was hired to investigate "strange sounds" that were heard on the tape. Plaintiff claims the recordings they were given should have contained the voice of Fay directing the stop of his car, the voices of anyone making reference to this fact or other incriminating statements. Plaintiff claims that McLarnon analyzed the tape and concluded that the tape had been edited. He also claims that the CD copy of the analog tape was also edited.

McLarnon's opinion and proposed testimony should be excluded because they are based on faulty facts and information provided to him by the plaintiff and the plaintiff's investigator and his analysis is based upon the faulty assumption that the Chelmsford Police Department audio recordings can be edited or manipulated. Further, McLarnon's methodology is faulty because he compared the analog tape that had been rerecorded several times to the CD Rom that was made using the proprietary Eyretel software.

McLarnon's opinion that portions of the tapes were deleted and that the CD Rom was manipulated is based upon alleged statements made by Moy to the plaintiff's investigator that he saw Fay walk toward the door and saw her use her radio. As noted above, Moy has denied making such a statement but even if he did, there is no evidence that Fay made any calls to the Chelmsford Police Department or what she said. Since McLarnon's opinion is based upon this faulty information, it should be totally disregarded.

Further, according to the defendants' expert Kathleen Redlund, the tapes used by McLarnon for comparison were rerecorded multiple times on an analog tape recorder. As Ms. Redlund indicates, analog tape decks have capstan drives that start and stop the tape and to coordinate with the calls can cause them to be out of synchronization. Also according to Redlund, the time variances that McLarnon relies upon were caused by rerecording the call several time on an analog tape deck so they should not have been used as comparisons to the CD produced by then Lt. Ubele that was made using the Eyretel software. McLarnon's opinion is based upon the faulty assumption that the Chelmsford Police Department audio recordings can be edited and manipulated. As Ms. Redland points out, the Eyretel DAT tape must remain intact to play calls on it. If a DAT tape was edited, it would not play and would come as an invalid index on the display or default. The DAT tape was not edited, as Lt. Ubele was able to make a copy while McLarnon watched.

**Conclusion**

For the reasons set forth above, the court should deny the plaintiff's Motion for Summary Judgment.

                              Respectfully submitted,

                              The defendants,
                              By their attorneys,

                              /s/ Jeremy Silverfine
                              Jeremy I. Silverfine, BBO#542779
                              Leonard H. Kesten, BBO#542042
                              Brody, Hardoon, Perkins & Kesten, LLP
                              One Exeter Plaza, 12th Floor
                              Boston, MA 02116
                              (617) 880-7100

Date:  April 3, 2007